67 F.3d 463
 RICO Bus.Disp.Guide 8953
 GICC CAPITAL CORP., Plaintiff-Appellant,
v.
TECHNOLOGY FINANCE GROUP, INC., Andrew Graham, Dennis
Williamson, Graham & Williamson, Creative Resources, Inc.,
TFF, Inc., Apple Leasing, Inc., James T. Pierce, Walter H.
Prime, Gordon Locke, TFG Acquisition Corp., and Arthur
Kronenberg, Defendants-Appellees.
 No. 1925, Docket 95-7102.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 15, 1995.
Decided Oct. 6, 1995.
 
 Richard P. Swanson, Reid & Priest, New York City (Pamela C. Tames, of counsel), for plaintiff-appellant.
 Eugene R. Scheiman, Baer, Marks & Upham, New York City (David P. Atkins, Zeldes, Needle & Cooper, Bridgeport, Connecticut, Anthony De Toro, New York City, of counsel) for defendants-appellees Andrew Graham, Dennis Williamson, Graham & Williamson, Gordon Locke, Creative Resources, Inc., TFF, Inc., Apple Leasing, Inc., James T. Pierce, Walter H. Prime.
 Frederic S. Ury, Ury & Moskow, Westport, Connecticut, for defendants-appellees Technology Finance Group, Inc., TFG Acquisition Corp., Arthur Kronenberg.
 Before: VAN GRAAFEILAND, MESKILL, and CABRANES, Circuit Judges.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Plaintiff GICC Capital Corp. ("GICC") brought this action against two groups of defendants that allegedly participated in the looting of assets from defendant Technology Finance Group, Inc. ("TFG"). TFG defaulted on a promissory note issued to GICC in settlement of unrelated litigation. GICC claims that the defendants engaged in a series of schemes designed to defraud GICC by permitting TFG to escape its obligation under the note. GICC alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968 (1988), and various state law fraud claims. The district court, adopting a ruling of Magistrate Judge Arthur H. Latimer, granted defendants' motions to dismiss for failure to state a claim on August 26, 1993, finding that GICC lacked standing under RICO.[1] We reversed and remanded. GICC Capital Corp. v. Technology Fin. Group, Inc., 30 F.3d 289 (2d Cir.1994). On remand, the district court granted defendants' renewed motions to dismiss plaintiff's RICO claim. The court concluded that plaintiff had failed to demonstrate that defendants' conduct amounted to continuous criminal activity or a threat thereof, and that plaintiff had therefore not alleged a "pattern of racketeering activity" under RICO. The district court also dismissed plaintiff's state law claims, finding no basis for the exercise of supplemental jurisdiction. On appeal, GICC contends that the district court erred in adopting an overly narrow view of RICO's "continuity" requirement.I. FACTS
 
 
 2
 For purposes of this decision, we take the facts alleged in plaintiff's amended complaint to be true. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). GICC holds a $500,000 promissory note issued by defendant TFG as part of a March 1990 settlement of unrelated litigation involving TFG and a principal of GICC. TFG defaulted on the note in December 1992. The amount due on the note stands at $407,021.07, with per diem interest of $110.66 since December 28, 1992.
 
 
 3
 Defendant Creative Resources, Inc. ("CRI") is a holding company that conducts its business through a group of subsidiaries. CRI was controlled, during the times relevant, by defendants Andrew Graham, Gordon Locke, James T. Pierce, Walter H. Prime, Dennis Williamson, and Graham & Williamson (a partnership of defendants Graham and Williamson). Until February 1991, defendant TFG was owned by TFF, Inc., a CRI subsidiary. TFG was in the business of leasing computer equipment. TFG would borrow funds, purchase equipment, lease the equipment to an initial end-user, and direct the rental payments to the lender. At the same time, it would "sell" the equipment to an investor, who would reap certain tax benefits from formal ownership. The investor, in turn, would lease the equipment back to TFG for a term longer than the term of TFG's lease with the initial end-user. For the remainder of the longer term, TFG would re-lease the equipment to a second end-user. Because TFG's loan would already be paid off, the second end-user rental payments would be available as profits, which TFG would share with the investor. TFG and the investor would thus each hold a "residual" interest--that is, rights to a portion of the second end-user rental income. TFG apparently held some of these residual interests, while others were held by its subsidiary, Apple Leasing Co.
 
 
 4
 GICC's complaint alleges that CRI and those who controlled it (1) at some time between June 1989 and March 1990, caused Apple Leasing to be transferred from TFG to CRI for no consideration, permitting CRI rather than TFG to benefit as Apple's parent from the income to which Apple was entitled under residual interests; (2) in March 1990, fraudulently induced GICC to accept a $500,000 note from TFG as part of a settlement agreement; (3) caused money to funnel out of TFG and into CRI by permitting Apple, rather than TFG, to repurchase investors' residual interests at a profit; (4) in February 1991, caused the transfer of TFG to defendant Arthur Kronenberg and his company, defendant TFG Acquisition Corp., for nominal consideration; and (5) at an unspecified time, shifted assets from CRI to an overseas subsidiary of CRI. GICC alleges that these transfers were designed to defraud TFG's creditors, including GICC.
 
 II. DISCUSSION
 
 5
 Section 1962 of RICO outlaws (a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern of racketeering activity"; (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above. GICC alleges that all of the defendants violated Sec. 1962(c), and that all of the defendants except TFG and TFG Acquisition violated Sec. 1962(a) and Sec. 1962(b). Under any prong of Sec. 1962, a plaintiff in a civil RICO suit must establish a "pattern of racketeering activity." The plaintiff must plead at least two predicate acts, see Sec. 1961(5), and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity, H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). The district court concluded that the plaintiff had failed to satisfy the so-called "continuity" requirement.
 
 
 6
 In H.J. Inc., the Supreme Court outlined the basic contours of the continuity requirement as follows:
 
 
 7
 "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.
 
 
 8
 492 U.S. at 241-42, 109 S.Ct. at 2902 (emphasis in original) (citation omitted). Thus, a plaintiff in a RICO action must allege either an "open-ended" pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a "closed-ended" pattern of racketeering activity (i.e., past criminal conduct "extending over a substantial period of time"). The district court concluded that GICC failed to allege either closed- or open-ended continuity here. We agree.
 
 A. Open-Ended Continuity
 
 9
 Our cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed. See, e.g., United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir.1995); United States v. Kaplan, 886 F.2d 536, 542 (2d Cir.1989), cert. denied, 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); United States v. Indelicato, 865 F.2d 1370, 1383-84 (2d Cir.) (en banc), cert. denied, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989); Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir.) (en banc), vacated and remanded, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, adhered to on remand, 893 F.2d 1433, cert. denied, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). Thus, an inherently unlawful act performed at the behest of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity. Aulicino, 44 F.3d at 1111. Where the nature of conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other external factors. Kaplan, 886 F.2d at 542-43. Thus, in Beauford, we found allegations that defendants had engaged in a one-time mailing of 8,000 copies of fraudulent documents in connection with a condominium conversion plan sufficient to plead a pattern of racketeering activity, where there was a basis to infer that similar mailings would occur in the future. Beauford, 865 F.2d at 1392. Similarly, in Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir.1994), we concluded that a series of fraudulent sales of securities over at least one year, coupled with fact that the defendants "apparently ha[d] been trying to continue to sell" securities, permitted a jury to find a RICO pattern. Id. at 521.
 
 
 10
 GICC does not allege that the nature of the defendants' conduct itself gives rise to a threat of continuity. Rather, GICC attempts to establish a threat of continuity by alleging that (1) the defendants would have continued to loot TFG if not for the fact that all available funds had already been looted; and (2) CRI would have continued to transfer money overseas had GICC not commenced litigation. We find plaintiff's first argument unpersuasive. Even if we assume that defendants' scheme was designed to deprive TFG of its assets, it is clear that the scheme was inherently terminable. It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot. For example, the predicate acts alleged in connection with the repurchases of residual investor interests--that is, mail and wire fraud--could not have continued once the pool of investor interests available for repurchase was exhausted. Indeed, plaintiff's claim that all available funds had been looted itself suggests that CRI had completed its wave of repurchasing. As for plaintiff's second claim, we find it entirely speculative. We conclude that GICC's allegations are not sufficient to suggest a threat of continuity.
 
 B. Closed-Ended Continuity
 
 11
 We find similarly unpersuasive GICC's allegations that a closed-ended pattern of racketeering activity exists. Since H.J. Inc., in which the Supreme Court made clear that closed-ended continuity can only be shown through conduct occurring over "a substantial period of time," 492 U.S. at 242, 109 S.Ct. at 2902 (emphasis supplied), we have found closed-ended continuity only twice. In Jacobson v. Cooper, 882 F.2d 717 (2d Cir.1989), we concluded that predicate acts occurring over "a matter of years," from approximately 1980 to 1988, satisfied the continuity requirement. Id. at 720. Similarly, in Metromedia v. Fugazy, 983 F.2d 350 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993), we found erroneous a jury instruction that "a few weeks or months" might constitute "a substantial period of time," but upheld a RICO verdict in favor of the plaintiff because the predicate acts in question spanned at least two years. Id. at 369; see also Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc., 879 F.2d 10, 18 (2d Cir.1989) (concluding, prior to Supreme Court's decision in H.J. Inc., that allegations of predicate acts occurring over "period of nearly two years" as part of a five-part fraudulent scheme were sufficient to plead pattern of racketeering activity), cert. denied, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990).
 
 
 12
 Plaintiff contends that the district court erroneously characterized the alleged activities of the various defendants as part of "a single short-lived scheme," and notes that, in any event, RICO does not require that a plaintiff demonstrate multiple schemes or goals. In Indelicato, we concluded that Congress did not mean "to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme." 865 F.2d at 1383; see also Beauford, 865 F.2d at 1391. That multiple schemes are not required in all circumstances does not mean that the number and nature of the schemes alleged by a plaintiff in a given case are entirely irrelevant. Rather, a plaintiff must provide some basis for a court to conclude that defendants' activities were "neither isolated nor sporadic." Id. We find that no such basis exists here.
 
 
 13
 Since H.J. Inc., other courts of appeals--as well as lower courts in this circuit--have attempted to measure whether closed-ended continuity exists by weighing a variety of non-dispositive factors, including, inter alia, the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes. See, e.g., Vicom v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 780 (7th Cir.1994); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412-13 (3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); Polycast Technology Corp. v. Uniroyal, Inc., 728 F.Supp. 926, 948 (S.D.N.Y.1989).
 
 
 14
 We first examine the temporal aspect of plaintiff's claim. GICC alleges a two-year period of racketeering activity; GICC variously identifies the starting point of that period as (1) the individual CRI defendants' takeover of CRI (in June 1989); (2) the transfer of Apple Leasing Co. to CRI (at an unspecified time between June 1989 and March 1990); and (3) the issuance of a promissory note in favor of GICC (in March 1990). Because GICC does not allege any racketeering activity in connection with the individual CRI defendants' takeover of CRI, the takeover cannot form the starting point of defendants' pattern of racketeering activity. GICC attempts to plead violations of the mail and wire fraud statutes in connection with the transfer of Apple Leasing from TFG to CRI. However, GICC alleges that the transfer was "fraudulent" in the sense that it was not disclosed to GICC prior to GICC's acceptance of the promissory note. Based on the amended complaint, we cannot conclude that plaintiff has alleged mail and wire fraud in connection with the actual transfer of Apple Leasing from TFG to CRI. We are left, then, with allegations of a pattern of racketeering lasting at most from the time the defendants allegedly induced plaintiff to accept a promissory note in March 1990, until TFG's sale to TFG Acquisition in February 1991.
 
 
 15
 As noted above, we have twice found closed-ended continuity since the Supreme Court's decision in H.J. Inc., and in each case the alleged pattern extended for a longer period of time. Those courts of appeals considering the issue have consistently refused to treat predicate acts occurring over a similar (or even longer) period of time a "pattern of racketeering activity" under RICO. See Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir.) (finding single-victim scheme lasting seventeen months insufficient to show continuity), cert. denied, --- U.S. ----, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994); Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir.1991) (holding that "twelve months is not a substantial period of time" for purposes of establishing pattern of racketeering activity), cert. denied, 504 U.S. 955, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992); J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 821 (7th Cir.1991) (concluding that thirteen months is not substantial under RICO); Menasco v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989) (holding that predicate acts with single goal occurring over one-year period do not form pattern); see also Metromedia, 983 F.2d at 369 (noting that "[p]eriods of 19 or 20 months ... have been held sufficient to support a finding of continuity"); Religious Technology Ctr. v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir.1992) (per curiam) (noting that "[w]e have found no case in which a court [of appeals] has held the [continuity] requirement to be satisfied by a pattern of activity lasting less than a year"). Though an approach giving such weight to the duration of criminal activities alleged in connection with a closed-ended pattern of racketeering activity is undoubtedly somewhat mechanistic, we believe that it is required to effectuate Congress's intent to target "long-term criminal conduct." H.J. Inc., 492 U.S. at 242, 109 S.Ct. at 2902; see id. at 243 n. 4, 109 S.Ct. at 2902 n. 4 ("[W]hen Congress said predicates must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity."); see also S.REP. NO. 91-617, at 158 (1969) (explaining pattern requirement); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (discussing RICO's legislative history). As the Court suggested in H.J. Inc., continuity is "centrally a temporal concept." 492 U.S. at 242, 109 S.Ct. at 2902.
 
 
 16
 Plaintiff provides no other basis for concluding that the defendants' acts satisfy the continuity requirement. The activities alleged involved only a handful of participants. Plaintiff attempts to allege that the defendants' activities affected multiple victims, including investors whose residual interests were purchased at a discount and other creditors. Nevertheless, plaintiff does not identify any other victims, nor state in anything but general terms the nature of their purported injuries. Finally, plaintiff contends that defendants' activities are properly characterized as a "multi-faceted scheme," and that it is settled law in this Circuit that similar activities extending over a similar period of time form a pattern. That is simply not the case. Of the cases the plaintiff cites for this proposition, all but one involved a threat of continuity, see Azrielli, 21 F.3d at 521; Morrow v. Black, 742 F.Supp. 1199, 1207 (E.D.N.Y.1990); Amsler v. Corwin Petroleum Corp., 715 F.Supp. 103, 105 (S.D.N.Y.1989), or a considerably longer period of time, see Toto v. McMahan, Brafman, Morgan & Co., No. 93 CIV. 5894, 1995 WL 46691, at * 3 (S.D.N.Y. Feb. 7, 1995); Constellation Bank, N.A. v. C.L.A. Management, No. 94 CIV. 0989, 1995 WL 42 285, at * 2, * 3 (S.D.N.Y. Feb. 1, 1995).[2] Only one case arguably supports plaintiff's statement. See Polycast, 728 F.Supp. at 926, 948 (finding that allegations of multiple acts of mail and wire fraud and securities law violations over eight-and-a-half-month period established RICO pattern). That case was not appealed to this court. In any event, it is sufficient to note that plaintiff's allegations do not present a "complex, multi-faceted conspiracy to defraud executed by numerous officers and stockholders" similar to that which the district court faced in Polycast. See id.
 
 
 17
 We are not prepared to conclude that the specific racketeering activities alleged in this case, occurring over less than one year and without a threat of future criminal activity, constitute the sort of "long-term criminal conduct" that Congress sought to target in RICO. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 By the same order, the district court dismissed plaintiff's federal securities claim. Plaintiff did not appeal this ruling
 
 
 [2]
 In addition, plaintiff relies on cases not directly discussing the continuity requirement, also distinguishable from the instant case. See HBE Leasing Corp. v. Frank, 22 F.3d 41, 43 (2d Cir.1994) (affirming district court's finding of RICO liability for three-year scheme); Turkish v. Kasenetz, 27 F.3d 23, 27 (2d Cir.1994) (finding predicate acts in connection with allegations of settlement fraud in 1987 and extortion in 1991); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1164 (2d Cir.) (finding mail and wire fraud occurring over five-year period), cert. denied, --- U.S. ----, 114 S.Ct. 385, 126 L.Ed.2d 334 (1993)