**CHINA TRUST BANK OF NEW YORK, Plaintiff,**

v.

**STANDARD CHARTERED BANK, PLC, an English Corporation, a/k/a Standard Chartered Bank, New York Branch, Defendant.**

**No. 96 CIV 9764(SWK).**

United States District Court,
S.D. New York.

Oct. 22, 1997.

284

Gary D. Nissenbaum, Wong, Tsai & Fleming Edison, NJ, for Plaintiff.

Martin Domb, Hill, Betts & Nash, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, Senior District Judge.

In this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.1961, *et seq.* ("RICO"), fraud and fraudulent misrepresentation, Standard Chartered Bank, PLC ("SCB") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss China Trust Bank of New York's ("China Trust") RICO claims and claim for punitive damages. For the reasons set forth below, China Trust's RICO claims are dismissed and SCB's motion to dismiss the claim for punitive damages is denied.

### BACKGROUND [1]

In or about March 1992, Standard Chartered Bank, New York Branch ("SCBNY") extended a $5 million credit facility to Chine Fashion, Inc. ("Chine Fashion"). The loan officer assigned to the Chine Fashion account was Leonardo Tee ("Tee"). In or about March 1993, SCBNY performed a credit review of the Chine Fashion account in connection with an application to increase the credit facility. SCBNY noted that the account had failed to perform in the manner for which it

---

1. On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true.

was originally approved and was not pleased with the manner in which the account had been handled. Nevertheless, SCBNY approved the increased credit application, subject to certain conditions. One of these conditions was that if Chine Fashion failed to comply with the terms of the credit as approved, proceeds from the sale of land were to be used to reduce the loan balance. In addition, the account was to be fully reviewed in July 1993.

In July 1993, a SCBNY credit officer wrote a memorandum to Tee's supervisor in which he criticized the way Tee had handled and internally reported on the Chine Fashion account. Tee's supervisor agreed that Tee erred in reporting that the account had been conducted in a satisfactory manner.

In September 1993, SCBNY prepared a "Substandard Account Report" which stated that Chine Fashion's credit rating had been downgraded because it had reported two consecutive years of operating losses. In December 1993, SCBNY's credit officer declined an application to extend Chine Fashion's credit facility, citing Chine Fashion's negative cash flow, its failure to comply with loan requirements to reduce its principal balance from $5 million to $4.85 million, and labor difficulties at its affiliated Philipine garment plant. The credit officer allowed Chine Fashion to continue to extend the credit facility for a limited period to allow Chine Fashion to find alternative bankers.

In late 1993 or early 1994, Tee told China Trust's President that Chine Fashion was leaving SCBNY because SCBNY was getting out of the middle market business, and that Chine Fashion was a good customer of SCBNY. China Trust alleges that these statements were false and that Chine Fashion was leaving SCBNY because of Chine Fashion's poor credit history, and that SCBNY's and Tee's intent was to find another bank to take over Chine Fashion's account. Thereafter, Chine Fashion applied to China Trust for a loan facility. China Trust alleges that Chine Fashion intentionally misrepresented its own financial condition and credit history at SCBNY, in order to induce China Trust to approve the facility.

On May 18, 1994, a loan officer at China Trust sent a credit inquiry to Tee, by which China Trust informed SCBNY that Chine Fashion had applied to China Trust for a $5 million line of credit, and asked SCBNY to comment on its overall experience with Chine Fashion. That same day, Tee responded in writing that Chine Fashion was a customer in good standing, that SCBNY considered its principals to be honorable, extremely cooperative and very knowledgeable of their business. China Trust alleges that these statements were false, and that SCBNY knew them to be false in view of the actual history of Chine Fashion's account at SCBNY.

The complaint alleges that after providing the written reference on May 18, 1994, SCBNY further mislead China Trust, when Tee informed Mr. M.S. Wu of China Trust, in June 1994, that SCBNY had frozen Chine Fashion's line of credit, not because of any problems with the loan, but because SCBNY wanted to remove itself from the middle market business. China Trust alleges that SCBNY's intent to mislead China Trust is reflected in an internal SCBNY memo which, in referring to the conversation with Mr. Wu, stated: "We hope we did not scare them off; the one immediate opportunity for a complete take out." Complaint ¶ 41.

On May 26, 1984, China Trust approved the $5 million facility to Chine Fashion and on June 28, 1994 extended Chine Fashion a temporary loan. On July 21, 1994, China Trust issued a commitment letter and on December 6, 1994 entered into the $5 million facility at which time it advanced Chine Fashion $3,559,045.67 to pay off Chine Fashion's outstanding debt to SCBNY. The complaint alleges that China Trust was fraudulently induced, by SCBNY's allegedly false statements, to approve and extend such loans and facilities to Chine Fashion.

Thereafter, China Trust sued Chine Fashion in New Jersey state court, alleging default, fraud and other wrongful acts by Chine Fashion. The instant complaint alleges that SCBNY, through Tee, committed perjury in the New Jersey state court proceeding by testifying that Chine Fashion's account at SCBNY had been managed satisfactorily, and that Chine Fashion left SCBNY because

of SCBNY's policy decision to stop lending to middle market customers such as Chine Fashion. Specifically, Tee provided a sworn certification, which Chine Fashion submitted in opposition to China Trust's application for injunctive relief. Moreover, Tee testified at a deposition taken in the New Jersey action, on August 1, 1996. On February 28, 1997, China Trust filed a complaint in this Court against SCB, alleging violations of RICO, common law fraud and fraudulent misrepresentation.

## DISCUSSION

### I. Standard of Law

On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### II. RICO

Title 18, section 1962(c) of the United States Code provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) .

In support of the motion to dismiss, SCB argues that the China Trust does not state a cause of action because it fails to allege a distinct enterprise under Section 1962(c) and because it fails to allege the element of continuity that is essential to establish a pattern of racketeering.

### A. Distinct Enterprise

To state a cause of action under Section 1962(c), a single defendant may not be both the enterprise and the person liable. *Bennett v. U.S. Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Section 1962(c) contains a distinctiveness requirement. "[A] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a racketeering activity." *Id.* Furthermore, this distinctiveness requirement may not be circumvented by alleging a conspiracy between the defendant and its own employees or agents carrying on the regular affairs of the defendant. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994). "Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* Moreover, in this Circuit, where the alleged conspirators are separate legal entities but operate within the same corporate structure guided by a single corporate consciousness, a RICO person may not be subject to liability simply because he is separately incorporated from the RICO enterprise. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063–64 (2d Cir.1996) ("It would be inconsistent for a RICO person, acting within the scope of its authority, to be subject to liability simply because it is separately incorporated, whereas otherwise it would not be held liable under *Riverwoods*."), *cert. denied*, —— U.S. ——, 118 S.Ct. 49, 139 L.Ed.2d 14 (1997).

SCB is a public liability company of England and SCBNY is registered with the New York Department of Banking as a "foreign branch of Standard Chartered Bank, plc." Complaint ¶ 6. SCB and SCBNY are alleged to be separate entities operating within the same corporate structure guided by a single corporate consciousness. See Plaintiff's Memorandum in of Law in Opposition to Defendant's Motion to Dismiss at 7–9. SCBNY is a separate enterprise that SCB

uses to conduct business in New York. Id. at 10. Thus, SCB and SCBNY are not distinctive entities for RICO purposes. China Trust has failed to distinguish the RICO person from the alleged enterprise, and thus cannot state a claim under Section 1962(c).[2]

### B. Continuity

■ To establish a pattern of racketeering activity, a plaintiff must show not only that the predicate acts of racketeering are related, but also "that they amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). The Court must be satisfied that the specific racketeering activities alleged constitute the sort of "long-term criminal conduct" that Congress sought to target in RICO. *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). "Continuity ... is centrally a temporal concept." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. at 242, 109 S.Ct. at 2902.

■ In order to demonstrate that the defendant's conduct possessed sufficient continuity, a RICO plaintiff must allege either a "closed-ended" pattern, in which the criminal conduct "extended over a substantial period of time," or an "open-ended" pattern, in which the past criminal wrongdoing carried with it the threat of future criminal activity. *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d at 466.

### 1. Open-ended Continuity

■ To demonstrate open-ended continuity, plaintiffs must show that the nature of the enterprise itself gave rise to a threat of continuity, or must point to other external factors which evidence a threat of a continued criminal conduct. *Id.* Thus, where "the enterprise is an entity whose business is racketeering activity" or where racketeering activities are carried out in association with a legitimate enterprise "at the behest of an

organized crime group," the requisite threat is established. *United States v. Kaplan*, 886 F.2d 536, 542 (2d Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990). Additionally, allegations that defendants were "trying to continue" to engage in the conduct giving rise to the RICO claim or that the scheme itself was not yet complete might be sufficient to plead open-ended continuity. *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir.1994). None of these factors is present here. China Trust has alleged only that SCB acted to defraud it into assuming the liability on Chine Fashion's account. Given this limited goal, the alleged scheme was inherently terminable. The allegations are clearly insufficient to support a threat of open-ended continuity. The Court cannot infer a threat of repeated fraud from the single alleged scheme and the plaintiff has not offered sufficient allegations to suggest that the alleged scheme is representative of the way SCB's business is generally conducted.

### 2. Closed-ended Continuity

■ There is no definitive test for determining what period of time is adequate for a finding of a closed-ended pattern. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). However, in this Circuit, an eleven month period of predicate activity does not constitute a sufficient pattern. Thus, "[t]hose courts of appeals considering the issue have consistently refused to treat: predicate acts occurring over a similar (or even longer) period of time a pattern of racketeering activity under RICO." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d at 467–68; *see CPF Premium Funding, Inc. v. Ferrarini*, No. 95 Civ. 4621, 1997 WL 158361, at *9 (S.D.N.Y. April 3, 1997). China Trust alleges a single scheme to defraud it into advancing a $5 million line of credit to Chine Fashion. The pattern of racketeering activity allegedly began in late 1993 or early 1994 when SCB provided China Trust with a deceptive finan-

---

2. A Section 1962(c) claim may, in some circumstances, be sustained when there is alleged to be only a partial overlap between the RICO persons

and the enterprise. *See Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989). However, plaintiff has not made such an allegation.

cial history of Chine Fashion.[3] The loan was advanced on December 9, 1994. This duration of time is insufficient to support a claim of closed-ended continuity.

▉ The length of time is not the sole factor on which closed-ended continuity may be based. The Court must weigh a number of factors, including, inter alia, the number of participants, the number of victims and the presence of separate schemes. *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d at 467. Although China Trust alleges a number of acts of misconduct, they were all carried out by a single defendant against one victim, pursuant to a single scheme. Therefore, the Court concludes that China Trust has not presented sufficient facts which would permit a finding of closed-ended continuity.

▉ China Trust seeks to extend the period of the racketeering scheme by alleging that Tee committed perjury in his April 1995 certification and his August 1996 deposition in the New Jersey state court action between China Trust and Chine Fashion.[4] A RICO claim may not be predicated upon allegations of perjury occurring in a state court proceeding. *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 707–08 (2d Cir.1990). Also, "actions taken years later by a party to avoid a court judgment on RICO predicate acts ... [are] too unrelated and distinct to be part of a pattern along with the earlier predicate acts." *Vemco, Inc. v. Camardella,* 23 F.3d 129, 134 (6th Cir.), *cert. denied,* 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994); *see, e.g., Barsam v. Pure Tech Int'l, Inc.,* 864 F.Supp. 1440, 1450

(S.D.N.Y.) ("In 'closed-ended' allegations of RICO violations

... efforts at covering up the initial fraudulent act are inadequate to satisfy the continuity requirement of the RICO statute."). Therefore, China Trust has failed to satisfy the continuity requirement to establish a pattern of racketeering and thus cannot state a claim under Section 1962(c).

### C. Remaining Claims

▉ Although SCB has raised the absence of a distinct enterprise only in defense of the Section 1962(c) claim, the same rationale applies to plaintiffs' cause of action for RICO conspiracy under Section 1962(d). Section 1962(d) "proscribes an agreement to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." *United States v. Viola,* 35 F.3d 37, 43 (2d Cir.1994), *cert. denied,* 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). A conspiracy claim cannot survive if the agreement at issue concerns actions which, by themselves would not constitute a RICO violation. Thus, because China Trust has failed to meet the distinctiveness and continuity requirements of Section 1962(c), it cannot state a valid claim for RICO conspiracy under Section 1962(d). *See, e.g., Sluka v. Estate of Herink,* No. 94 Civ. 4999, 1996 WL 612462, at *7 (E.D.N.Y. Aug.13, 1996) (permitting RICO conspiracy claim in absence of distinctiveness would "essentially make the distinctness requirement of section 1962(c) meaningless").

---

3. The complaint alleges that the first communication between SCB and CTBNY concerning the Chine Fashion account occurred in late 1993 or early 1994. *See* Complaint ¶ 22. However, in CTBNY's memorandum of law in opposition to SCB's motion to dismiss, it alleges that the misrepresentations began on March 9, 1993 when an internal memorandum at SCB misstated the financial history of Chine Fashion. The Court is obligated to resolve this conflict in favor of the date alleged in the complaint. Furthermore, the alleged fraud commenced with the first communication from SCB to CTBNY, which according to CTBNY's complaint, took place in late 1993 or early 1994.

4. The federal perjury statute, 18 U.S.C. § 1621, is not included among the federal statutory crimes that may serve as predicate acts for a RICO claim. *See* 18 U.S.C. § 1961(1)(B). Furthermore, neither perjury nor obstruction of justice is included among the generic state law crimes that may serve as RICO predicate acts, listed in Section 1961(1)(A). *See* 18 U.S.C. § 1961(1)(A). Therefore, perjury alone is not a racketeering activity. However, perjury is indictable under 18 U.S.C. § 1503, the federal obstruction of justice statute. Crimes under Section 1503 are included under the predicate acts of Section 1961(1)(B). Thus, CTBNY argues perjury may, in some circumstances constitute an act of racketeering.

### D. Leave to Replead RICO Claims

 Federal Rule of Civil Procedure 15(a) provides, in part, that once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision to grant or deny leave to amend lies within the Court's discretion. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Court may deny leave to amend if, inter alia, the amendment would be futile. The Court should deny leave to amend on the basis of futility where the amended pleading would be dismissed pursuant to Rule 12(b)(6), for failure to state a claim. *Thompson v. Gjivoje,* 687 F.Supp. 922, 924 (S.D.N.Y.1988).

China Trust has requested leave to replead its RICO claim in the event that the Court finds it defective. China Trust may submit to the Court, by November 12, 1997, a proposed amended complaint accompanied by a memorandum of law of no more than ten pages in length outlining how the defects in the present complaint have been corrected. Thereafter, the Court will decide whether leave to amend shall be granted.

### IV. Punitive Damages [5]

 Punitive damages are available under New York law when the wrongdoer (1) acted maliciously, wantonly or with a recklessness that betokens an improper motive or vindictiveness; (2) has engaged in outrageous or oppressive intentional misconduct; or (3) has acted with recklessness or wanton disregard of safety or rights. *United States v. Hooker Chems. & Plastics Corp.,* 748 F.Supp. 67, 78 n. 11 (W.D.N.Y.1990). "[M]ere fraud is insufficient to support a claim of punitive damages.... [P]unitive damages [are] available only where [the] defendant acts with evil and reprehensible motives." *Wallach Marine Corp. v. Donzi Marine Corp.,* 675 F.Supp. 838, 842 (S.D.N.Y. 1987). The recovery of punitive damages depends on proof of the "defendant's culpa-

bility for gross conduct." *Janina Travel Bureau, Inc. v. Kalison,* 72 A.D.2d 916, 917, 422 N.Y.S.2d 322, 323 (N.Y.App.Div.1979). Contrary to SCB's assertion, there is no requirement that the fraud be aimed at the general public in order to recover punitive damages. *See Borkowski v. Borkowski,* 39 N.Y.2d 982, 983 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976).

SCB relies on *Banque Indosuez v. Barclays Bank PLC,* 181 A.D.2d 447, 580 N.Y.S.2d 765 (N.Y.App.Div.1992), in support of its argument that punitive damages are not recoverable in an action by a bank alleging that another bank fraudulently induced it to extend a loan to a customer. In *Banque Indosuez,* one bank provided another with a deceptive letter of reference indicating that a $4 million overdraft was under review, notwithstanding the fact that on that very day, the defendant bank demanded repayment of the overdraft. *Id.* at 447, 580 N.Y.S.2d 765. In the course of reviewing a decision on a motion for summary judgment, the court held that punitive damages were not available because with respect to the half-truths and affirmative misrepresentations at issue, there were insufficient allegations of a public wrong and the parties were not in a confidential relationship. However, *Banque Indosuez* does not dictate the outcome in the instant case.

As an initial matter, *Banque Indosuez* was decided on a motion for summary judgment. While the determination in that case that punitive damages were not available appears to be a finding of law, the court had the benefit of a more fully developed set of facts than is before the Court in the instant case. In *Banque Indosuez,* the court found that there was no public wrong or confidential relationship between the parties. The Court is not prepared to find in the instant case, based solely on the complaint, that there was no public wrong or confidential relationship between the parties. Therefore, the motion to dismiss the claim for punitive damages on the same grounds as in *Banque Indosuez* must be denied.

In any event, we respectfully disagree with the court's view of the law in *Banque Indo-*

---

5. Without the RICO claims, the complaint states only common law claims. Because the complaint invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court may not, on the facts alleged, dismiss the common law claims pursuant to 28 U.S.C. § 1367(c).

*suez.* New York law clearly permits punitive damages in cases involving "involving gross, wanton, or willful fraud or other morally culpable conduct." *Cohen v. Davis,* 926 F.Supp. 399, 405 (S.D.N.Y.1996) (citations omitted). Punitive damages are permitted even if the conduct is not aimed at the general public. *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 509 (2d Cir.1991); *Borkowski v. Borkowski,* 39 N.Y.2d at 983, 387 N.Y.S.2d at 233, 355 N.E.2d at 287 (it is "not essential ... that punitive damages be allowed in a fraud case only where the acts had been aimed at the public generally.") Only in actions arising from a breach of contract might a plaintiff need to allege conduct constituting a public wrong. *See New York University v. Continental Insurance Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 287, 662 N.E.2d 763, 767 (1995) (setting forth pleading elements required to state a claim for punitive damages when claim arises from breach of contract).

The Court takes no position as to whether punitive damages are warranted in this case, that is a matter to be decided after all evidence has been admitted at trial. At this early stage of the litigation, taking all of the facts as alleged in the complaint, China Trust has alleged sufficient facts to state a claim for punitive damages. China Trust alleges that SCB wilfully and intentionally defrauded China Trust by telling untruths. Thus, China Trust has alleged the type of highly culpable wrongdoing that may be appropriate for punitive damages.

### CONCLUSION

For the reasons set forth above, SCB's motion to dismiss the RICO claims, pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted and SCB's motion to dismiss the claim for punitive damages is denied. If China Trust wishes to amend its complaint, it shall submit a proposed amended complaint to the Court with an accompanying memorandum of law not to exceed ten pages in length by November 12, 1997.

SO ORDERED.