Michael WATRAL, Plaintiff,

v.

**SILVERNAILS FARMS, LLC, Silvernails Bloodstock, LLC, Michael Tobin, Dennis Brida and Dennis Brida Racing Stables, Inc., Defendants.**

No. CV 01–4674.

United States District Court, E.D. New York.

Dec. 19, 2001.

Bonstrom & Murphy, By Kim Bonstrom, Karen Murphy, New York City, for Plaintiff.

Paul A. Batista, P.C., New York City, for Plaintiff.

Seyfarth Shaw, By Andrew Lachow, New York City, for Silvernails Farms, LLC and Silvernails Bloodstock, LLC.

Hoffman, Pollak & Pickholz, LLP, By William A. Rome, New York City, for Michael Tobin.

Lamb & Barnosky, LLP, By Joel Markowitz, Melville, NY, for Dennis Brida and Dennis Brida Racing Stables, Inc.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), alleging that defendants engaged in a pattern of racketeering activity in connection with the boarding and breeding of plaintiff's thoroughbred horses. While plaintiff also seeks relief pursuant to state law causes of action, the RICO claim is the sole basis for federal jurisdiction.

Presently before the court is the motion of all defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the RICO claim for failure to state a cause of action. Additionally, defendants move to disqualify plaintiff's counsel on the ground of an asserted conflict of interest based upon her prior representation of defendant Dennis Brida.

For the reasons that follow, the court dismisses Plaintiff's RICO claim. It is unnecessary, therefore, to consider the disqualification motion. The court declines to exercise its discretion to consider the remaining state law claims and, accordingly, dismisses the complaint in its entirety.

### BACKGROUND

#### I. Factual Background

In light of the fact that this case is presented, at this juncture, as a motion to dismiss, the court will outline here those facts relevant to the motion that are not in dispute and in the light most favorable to plaintiff, the non-moving party.

#### A. The Parties

Plaintiff Michael Watral ("Plaintiff" or "Watral") is an individual who, for a number of years prior to this lawsuit, owned and bred thoroughbred horses. Defendant Dennis Brida ("Brida") is engaged in the business of training and breeding thoroughbred horses. Brida is the sole owner and shareholder of defendant Dennis Brida Riding Stables ("Brida Stables"). The remaining defendants are Silvernails Farms, LLC and Silvernails Bloodstock, LLC, related New York corporations, and Michael Tobin, alleged to be an employee, officer, director and/or shareholder of the two corporations. Silvernails Farms is a facility where thoroughbred horses are bred and trained. The court refers to the latter named defendants collectively as the "Silvernails Defendants."

#### B. The Parties' Relationships

The complaint details Plaintiff's allegations of Defendants' breach of their alleged fiduciary obligations in connection with the raising, stabling and breeding of Plaintiff's horses. Plaintiff alleges, generally, the existence of a scheme to deprive him of the value of breeding rights to thoroughbred horses owned by Plaintiff and handled by Defendants. Among the allegations of the Complaint are assertions that Defendants bred Plaintiff's horses without his knowledge, forged breeding and ownership documents and provided Plaintiff with years of false accountings concerning the management of his horses. A more specific rendition of the factual allegations follows.

##### 1. Plaintiff and Brida

The relationship between Plaintiff and Brida began shortly after Plaintiff began

to acquire horses in the early 1980's. At that time, Watral hired Brida and Brida Stables to train and manage Plaintiff's horses. In 1991, Plaintiff acquired a horse that would soon become a valuable breeder—Dixie Brass. Dixie Brass earned over $600,000 in a year of racing. After suffering a career ending injury, Dixie Brass retained his value as a breeder. In 1993, Plaintiff put Dixie Brass to stud. Dixie Brass has sired numerous winners and commanded stud fees of $10,000 per live foal. According to Plaintiff, over 3 million dollars in breeding rights to Dixie Brass have been sold, bartered, misappropriated or given away by Defendants.

In support of this allegation, the Complaint discusses, first, the misappropriation of breeding rights engineered by Brida while Dixie Brass was stabled at a facility known as "The Vinery." According to Plaintiff, the stud fees at this facility should have totaled approximately $300,000. Plaintiff alleges, however, that he was paid only $17,000 in stud fees while Dixie Brass was stabled at The Vinery. After Plaintiff ordered Brida to remove Plaintiff's horses from The Vinery, they were moved to a facility known as "Stallion Park," in New York. According to Plaintiff, Brida again stole at least one breeding right to Dixie Brass while the horse was stabled at Stallion Park.

### 2. *Allegations Regarding the Silvernails Defendants*

The first allegations of the Complaint to include the Silvernails Defendants are those arising from the stabling of Plaintiff's horses at the Silvernails Facility, beginning in 1998. First, it is alleged that Brida relocated Plaintiff's horses to the Silvernails Facility without Plaintiff's con-

sent. This relocation was allegedly contingent upon an agreement reached between Brida and the Silvernails Defendants to steal and cover up stolen breeding rights.

Plaintiff also alleges the existence of a scheme among Brida and the Silvernails Defendants to undermine the value of Plaintiff's horses by reducing the number of mares bred to Dixie Brass and spending Plaintiff's money on the boarding of "questionable mares." These two tactics were allegedly engaged in to put Plaintiff in a position where he could no longer meet his financial obligations which would result in a forced judicial sale of Plaintiff's breeding stock to Brida. Plaintiff also alleges that, as part of the scheme, the Defendants agreed to a "cover-up" story in the event that they were caught.

### 3. *Plaintiff Terminates Brida*

In September of 1999, Watral terminated his business relationship with Brida. He states that he hired an individual, Diane Nelson, to audit his accounts with Defendants. Although Nelson was allegedly approached by Defendant Tobin to join in the scheme to cover up the fraud allegedly perpetrated upon Plaintiff, she refused to become involved. It is undisputed that Plaintiff no longer stables any of his breeding stock with Silvernails or Brida.

After his termination, Brida sent Watral invoices for amounts allegedly due in connection with the stabling and breeding of Plaintiff's horses. When Watral failed to pay these invoices Brida commenced an action in state court against Watral.

### II. *Legal Allegations in the Complaint*

As noted above, Plaintiff's sole federal cause of action is a RICO claim.[1] In sup-

---

1. Plaintiff also alleges a RICO conspiracy claim. Because the conspiracy claim is de-

pendent upon a valid substantive claim, the

port of his claim, Plaintiff alleges that the Silvernails Defendants and Brida constitute a group of persons, associated in fact, for the common purpose of carrying out the fraudulent scheme discussed above. According to Plaintiff, this association constitutes an "enterprise" within the meaning of the applicable statute.

The predicate acts of racketeering alleged by Plaintiff include the following criminal activities: (1) mail fraud; (2) wire fraud; (3) interstate transport of stolen goods; (4) sale or receipt of stolen goods; (5) money laundering; (6) obstruction of justice and (7) commercial bribery and receipt of a bribe.

Plaintiff characterizes the objective of the scheme—the RICO "pattern of racketeering activity"—as the diversion of millions of dollars of Plaintiff's assets and business opportunities and the issuance of false statements and accountings to hide the misappropriation of Plaintiff's breeding stock. Plaintiff alleges that discovery taken in this lawsuit thus far is beginning to reveal the multi-year nature of Defendants' fraud. He further alleges that the racketeering activity continues to date in the form of the giving of false testimony in this lawsuit.

## III. *The Motion to Dismiss*

Defendants move to dismiss on the ground that Plaintiff's complaint fails to properly allege a RICO cause of action. In support of the motion, Defendants argue that Plaintiff: (1) fails to allege a RICO pattern; (2) fails to allege a RICO enterprise and (3) that the allegations of predicate acts are deficient.

After outlining the applicable law, the court will consider the merits of the motion.

court discusses the RICO claim as a single

## DISCUSSION

### I. *Legal Principles*

#### A. *Standard for Motions to Dismiss*

 A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). It is not for the court to "weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient ..." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 186 (E.D.N.Y.2000).

#### B. *Stating a RICO Claim*

 To establish a RICO claim pursuant to 18 U.S.C. § 1962(c), plaintiff must prove "(1) a violation of the RICO statute ... (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001); *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir.1996); *New York Transportation, Inc. v. Naples Transportation, Inc.*, 116 F.Supp.2d 382, 387 (E.D.N.Y.2000). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *De Falco v. Bernas*, 244 F.3d 286 306 (2d Cir.), *cert. de-*

claim herein.

nied, —— U.S. ——, 122 S.Ct. 207, —— L.Ed.2d —— (2001), quoting, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

### 1. Enterprise

A RICO "enterprise," as defined in the statute, includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing of a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), *see United States v. Morales*, 185 F.3d 74, 80 (2d Cir.1999), *cert. denied*, 529 U.S. 1010, 120 S.Ct. 1282, 146 L.Ed.2d 229 (2000); *Manhattan Telecommun. Corp., Inc. v. DialAmerica Marketing, Inc.*, 156 F.Supp.2d 376, 380 (S.D.N.Y.2001).

### 2. Pattern of Racketeering Activity

A "pattern of racketeering activity," requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period. *See* 18 U.S.C. § 1961(5); *New York Transportation*, 116 F.Supp.2d at 387; *Oak Beverages, Inc. v. Tomra of Massachusetts, LLC*, 96 F.Supp.2d 336, 346 (S.D.N.Y. 2000). Predicate acts of racketeering activity include a variety of federal and state criminal offenses including the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1); *see* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). While federal mail and wire fraud constitute RICO predicate acts, common law fraud under state law does not constitute such an act. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.1999).

A "pattern" of racketeering activity requires a showing that the predicate acts relied upon are "related, *and* that they amount to or pose a threat of continued criminal activity." *Cofacredit*, 187 F.3d at 242, quoting, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were "neither isolated or sporadic." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995), *quoting, Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir. 1989). The element of continuity may be satisfied by a showing of either "closed ended continuity" or "open-ended continuity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. 2893; *Cofacredit*, 187 F.3d at 242.

### i. Closed Ended Continuity

Closed ended continuity is shown by proving "a series of related predicate acts extending over a substantial period of time." *Cofacredit*, 187 F.3d at 242. When calculating the relevant time period, the court considers only the time during which defendants committed the predicate acts alleged. *DeFalco*, 244 F.3d at 321. Actions that do not constitute predicate acts are not considered when calculating the relevant time period. *GICC Capital Corp.*, 67 F.3d at 468.

The Second Circuit has recently noted that it has never held a period of less than two years of activity to be sufficient to satisfy the closed ended continuity requirement. *See De Falco*, 244 F.3d at 321. While closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the "number and variety of predicate acts, the number of both partici-

pants and victims, and the presence of separate schemes" as relevant when determining whether closed ended continuity exists. *DeFalco,* 244 F.3d at 321; *New York Transportation,* 116 F.Supp.2d at 388.

#### ii. Open Ended Continuity

■ A RICO plaintiff may also satisfy the continuity element by a showing of "open ended" continuity. To establish this type of continuity, it need not be shown that predicate acts were engaged in over an extended period of time. Instead, plaintiff must show that there was a threat of continuing criminal activity "extending indefinitely into the future." *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. 2893. This threat of continuing criminal activity must, therefore, extend "beyond the period during which the predicate acts were performed." *De Falco,* 244 F.3d at 323; quoting, *Cofacredit,* 187 F.3d at 242.

■ The key considerations to the question of open ended continuity are the nature of the enterprise and the predicate acts alleged. *See Cofacredit,* 187 F.3d at 242. If the enterprise alleged is engaged in "inherently unlawful" acts, there is a threat of continuing criminal activity and open ended continuity exists. *Id.*

On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity. *Id.; see also GICC Capital Corp.,* 67 F.3d at 466; *Allen v. New World Coffee, Inc.,* 2001 WL 293683 *6 (S.D.N.Y. Mar.27, 2001); *Jordan(Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd.,* 154 F.Supp.2d 682, 694 (S.D.N.Y.2001).

## II. Disposition of the Motion

When considering the RICO elements set forth in Plaintiff's complaint, the court considers first the last-discussed element above—whether Plaintiff has properly alleged a pattern of racketeering activity. For the reasons set forth below, the court holds that he has not.

### A. Plaintiff Cannot Establish Closed Ended Continuity

■ As to closed ended continuity, the first consideration is the duration of alleged scheme. Although Plaintiff's complaint alleges activities by Brida extending back to 1993, the misappropriated breedings referred to during this early time frame took place when Plaintiff's breeding stock was stabled at The Vinery. Neither that facility nor any of its principals are alleged to be involved in the scheme described in the Complaint. Thus, it is inappropriate to consider these allegations when considering the length of the scheme alleged. *See Internat'l Bhd. Of Teamsters v. Carey,* 163 F.Supp.2d 271, 280–81 (S.D.N.Y.2001) (including only predicate acts alleged to determine the period of the scheme).

■ The particular scheme forming the factual basis of the Complaint commenced when Brida began stabling Plaintiff's horses at the Silvernails facility. This did not take place until 1998. The alliance among Defendants thus began in 1998. The first predicate act alleged by Plaintiff took place in early 1999, when the Silvernails Defendants allegedly agreed to bribe Brida. The scheme ended, upon discovery by Plaintiff, in September of 1999. Plainly, this short duration does not fall within the time period designated by the Second Circuit as sufficient to establish closed ended continuity.

Plaintiff attempts to extend the duration of the scheme by alleging that the defense to this action (Defendants' explanation of the terms of the parties' agreement), was part of the original scheme. Plaintiff also attempts to extend the duration of the scheme by tacking on statements made during the course of this litigation as constituting obstruction of justice. Allowing Plaintiff to extend the scheme by including the defense of a RICO action would effectively allow any plaintiff to extend the length of a closed ended scheme to last throughout the course of any litigation. The court therefore rejects Plaintiff's attempts to extend the duration of the scheme alleged beyond the date when it was uncovered and necessarily ceased to operate. *Cf. United States v. Biaggi*, 909 F.2d 662, 686 (2d Cir.1990)(taking part in a predicate act and later denying that act do not constitute separate acts of racketeering activity).

Even if the time frame alleged by Plaintiff was sufficient to establish closed ended continuity, the nature of the scheme would undermine such a finding. As noted, the court considers, not only the time frame alleged, but also other factors, to determine whether there is closed ended continuity. *See De Falco*, 244 F.3d at 321; *New York Transportation*, 116 F.Supp.2d at 388. None of these factors—the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes—militate in favor of a finding of closed ended continuity.

Here, the scheme described in the Complaint was aimed at a single victim and involved the carrying out of a single plan. There is no allegation of a broad based scheme aimed at a variety of horse owners. The scheme ended upon its discovery and the removal of Watral's horses from Defendants' facility and care. Thus, even

consideration of factors beyond the time frame alleged leads to the conclusion that Plaintiff cannot satisfy the continuing criminal conduct element by a showing of closed ended continuity.

### B. *Plaintiff Cannot Establish Open Ended Continuity*

Nor can Plaintiff establish a threat of continuing criminal activity in the form of open ended continuity. Such a threat exists only: (1) where the enterprise itself is engaged in primarily criminal conduct or, (2) the predicate acts alleged are the regular way of conducting a legitimate business or, (3) the nature of the predicate acts themselves imply a threat of continuing criminal activity. None of these factors are present here.

First, the enterprise alleged—the stabling and breeding of horses at the Silvernails Facility—is a legitimate business and not a business that is engaged in primarily criminal conduct. There is nothing criminal in nature about the stabling and breeding of horses.

Nor has Plaintiff alleged that the way in which his breeding stock was handled was the "regular way" of doing business at the Silvernails Facility. Plaintiff nowhere alleges that the facility, owned by individuals not named in the Complaint, was established for the carrying out of the criminal theft of the breeding rights to thoroughbred horses in general. Instead, it is alleged only that Tobin and Brida entered into an illicit agreement to undermine the value of, and steal the breeding rights to, Plaintiff's horses. This limited scheme cannot transform an otherwise legitimate business into a business regularly conducted through criminal conduct. Finally, the nature of the predicate acts do not give rise to a threat of continuing criminal activity. The predicate acts alleged in the Complaint (most of which are mail and

wire fraud and many of which constitute only breach of contract) took place in furtherance of the limited scheme aimed only at Plaintiff and his horses.

In sum, the scheme alleged by Plaintiff was inherently terminable. It involved only the Plaintiff and his breeding stock. Once the scheme was uncovered and Plaintiff removed his horses from the Silvernails Facility, the scheme necessarily came to an end. Thus, there can be no argument supporting any claim of open ended continuity.

### C. *The Substantive RICO Claim is Dismissed*

Plaintiff's failure to establish either closed ended or open ended continuity requires dismissal of his substantive RICO claim. This dismissal makes it unnecessary to consider whether any of the RICO elements not discussed herein have been properly alleged and the court therefore expresses no opinion as to such elements.

### III. *Conspiracy Claim*

 To state a RICO conspiracy claim, a plaintiff must allege a substantive RICO violation. *Cofacredit*, 187 F.3d at 244–45; *Allen v. New World Coffee, Inc.*, 2001 WL 293683 *9 (S.D.N.Y. Mar.27, 2001). Plaintiff's failure in this regard requires dismissal of his conspiracy claim as well. *Accord Burke v. Town of East Hampton*, 2001 WL 624821 *17 (E.D.N.Y. March 16, 2001).

### IV. *Remaining Claims and Motion*

Having dismissed Plaintiff's RICO claims, the only claims remaining are claims brought pursuant to New York State law. The court declines to exercise its discretion to entertain such claims. The state law claims are, accordingly, dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

Dismissal of Plaintiff's claims makes it unnecessary to consider the merits of the disqualification motion. That motion is therefore denied without prejudice to being raised in an appropriate state forum.

### *CONCLUSION*

For the foregoing reasons, Defendants' motions to dismiss are granted in their entirety. The Clerk of the Court is directed to terminate any outstanding motion and close this case.

SO ORDERED.