**Mahmoud A. YOUNIS, Plaintiff,**

v.

**THE AMERICAN UNIVERSITY IN CAIRO, et ano., Defendants.**

No. 98 Civ. 4260(LAK).

United States District Court,
S.D. New York.

Dec. 7, 1998.

Sidney H. Kalban, Freeport, NY, for Plaintiff.

Jeffrey I. Zuckerman, Curtis, Mallet-Prevost, Colt & Mosle, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, an engineering professor whose employment ended after his application for tenure was denied at The American University at Cairo ("AUC"), here seeks recovery against his former employer for breach of contract.[1] AUC moves to dismiss on the ground of *forum non conveniens*. As there is no substantial basis for litigating this case in the United States and there is a readily available forum in Egypt, where the parties currently are locked in litigation concerning the same dispute, the motion is granted.

### Facts

Plaintiff Mahmoud Younis, who then was in Egypt after having spent 13 years teaching in Kuwait, applied to AUC for a teaching position in Cairo.[2] He was hired in 1991 as a professor of engineering and embarked upon his duties in the same year. His application for tenure was denied in 1997, and his employment by AUC ended, in accordance with AUC's standard policies, on August 31, 1998.

Dr. Younis brought this action for alleged breach by AUC of his employment contract. But this is not the only forum in which he seeks redress. On September 6, 1998, he submitted a complaint to the West Cairo Labor Relations Office ("LRO"), alleging that his dismissal by AUC was wrongful.[3] On or about September 16, 1998, the LRO referred the case to the Labor Court of Cairo, Egypt, where it now is pending.[4] Dr. Younis there seeks reinstatement and back pay.[5]

The facts pertinent to the *forum non conveniens* issues are straightforward. While AUC has a small representative office in New York, it engages here only in coordinating recruitment, fund raising, public relations and personnel benefit administration. Everything else is done in Egypt. No one in the New York office had anything to do with the events at issue here apart from sending

---

1. Plaintiff sued Dr. Donald McDonald, a former president of AUC, as well. The Court previously granted Dr. McDonald's motion to dismiss for lack of personal jurisdiction.

2. Snaith Decl. ¶ 12; Younis Decl. ¶¶ 1–2.

3. Riad Supp. Decl. ¶ 1(a).

4. *Id.* ¶ 2.

5. *Id.* ¶ 3.

Dr. Younis a proposed employment contract after the offer of employment was extended to him and correcting an error in the description of Dr. Younis' academic rank following agreement by the chairman of the engineering department in Cairo.[6]

Dr. Younis' 1996 application for tenure was considered by an *ad hoc* committee in the engineering department, by the tenured faculty in and the chairman of that department, by the tenure committee of the School of Science and Engineering, by the Provost Advisory Committee, and by the Provost and President of AUC. The entire review took place in Cairo, and everyone involved in it then resided and worked there.[7] Dr. McDonald ultimately decided not to recommend that the Board of Trustees grant tenure and, according to AUC, therefore did not forward the application to it.[8] Dr. Younis, however, suggests that Dr. McDonald discussed the decision with some trustees while at a meeting in New York in June 1997.[9] To the best of his information, the individuals with whom such discussions took place reside in Texas and Ohio.[10]

Following Dr. McDonald's resignation, Dr. Younis asked AUC's acting president, Dr. Frank E. Vandiver, to review Dr. McDonald's decision. Vandiver did so in Cairo but declined to overturn the decision.[11]

As might be expected, almost all of the evidence pertaining to this matter is in Cairo. Of the nineteen people who participated in the review of Dr. Younis' tenure application, sixteen still reside in Egypt.[12] As far as the evidence before the Court shows, any trustees with whom the issue was discussed live in Texas and Ohio.[13] AUC has indicated also, without contradiction, that there are seven

documents totaling 25 pages in its New York office that are responsive to plaintiff's document request while there are tens of thousands of pages—including copies of the New York documents—in Cairo.[14]

## Discussion

■ The analysis of *forum non conveniens* motions requires consideration of whether there is an adequate alternative forum[15] and, if so, a balancing of "a series of private and public interests in determining whether to retain the case or dismiss it in favor of [the] alternative forum."[16] The principal battleground in this case is whether the courts of Egypt provide adequate alternative fora.

### *Adequacy of Egyptian Forum*

■ AUC has submitted declarations of Dr. Tarek F. Riad, a member of the Egyptian Bar as well as a member of the Egyptian Council of State, the holder of LL.M. and S.J.D. degrees from the Harvard Law School, a former lecturer on conflicts of laws at the Cairo University Law School, a partner in an Egyptian law firm, and special legal counsel to the President of the Egyptian parliament. His firm is defending AUC in the Egyptian litigation brought by Dr. Younis. Dr. Younis, for his part, has submitted a declaration of Dr. Mohamed Abdel Moteleb Ahmed, also an Egyptian lawyer, holder of LL.M. and S.J.D. degrees from New York University School of Law, and counsel for Dr. Younis in his Egyptian lawsuit.

Drs. Riad and Ahmed agree on the broadest of propositions: Egypt has courts that hear civil cases including claims for breach of

---

**6.** Snaith Decl. ¶ 11; Younis Decl. ¶ 3 & Ex. 1.

**7.** Snaith Decl. ¶ 19.

**8.** *Id.* ¶ 20.

**9.** Younis Decl. ¶ 10.

**10.** *Id.* ¶ 14.

**11.** Snaith Decl. ¶ 23.

**12.** *Id.* ¶ 29. The other three are in Texas, California and Ohio. *Id.*

**13.** Younis Decl. ¶ 14.

**14.** *Id.* ¶ 28.

**15.** *E.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); see *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

**16.** *Manela v. Garantia Banking Ltd.,* 940 F.Supp. 584, 590 (S.D.N.Y.1996) (quoting *Ioannides v. Marika Maritime Corp.,* 928 F.Supp. 374, 377 (S.D.N.Y.1996)).

contract and wrongful termination. Dr. Younis may pursue, indeed is pursuing, such a suit against AUC in Cairo. Beyond that, they differ on details.

Dr. Ahmed contends that "[a]n action for breach of an employment contract by denial of tenure can only be brought in an Egyptian court while there is still a work relationship between the employee and the employer" and that Dr. Younis no longer may bring such an action because his employment by AUC terminated on August 31, 1998.[17] Dr. Riad disputes this, asserting that Article 698 of the Egyptian Civil Law permits the commencement of an "[a]ction[ ] arising out of a labor contract ... [within] one year from the time of the termination of the contract" and that claims by Dr. Younis with respect to the denial of tenure and the termination of his employment would be timely if commenced by August 31, 1999.[18]

Next, Dr. Ahmed contends that Article 72 of the Egyptian Labor Code permits an action for wrongful termination when there is a fixed period which has been renewed, as is the case here, but that such an action may not be brought by a "foreign hire." He maintains that Dr. Younis is a Canadian citizen, that Dr. Younis brought suit in Egypt under Article 72, that AUC defended on the ground that Dr. Younis was a foreign hire, and that "the action has to be withdrawn." [19] Dr. Riad counters that Dr. Younis' action has not been withdrawn and, in any case, Article 72 does not foreclose foreigners from suing for wrongful termination of employment contracts.[20]

Third, Dr. Ahmed asserts that "[a]ny other action Dr. Younis might have for breach of contact is governed under Egyptian law by a one year statute of limitations, with that year beginning on the date when he learned that the contract had been breached, that the employment would, at some future date, be terminated," which, he says, in this case was in June 1997.[21] Dr. Riad disagrees, stating that the one year limitations period, which is established by Article 698 of the Civil Law, begins on the date of actual termination of the contract.[22]

Fourth, Dr. Ahmed contends that an Egyptian court, even if a claim were timely and sufficient, could not order reinstatement or the granting of tenure because the Egyptian action was brought following the termination of employment while he would be entitled to that relief in this Court even if Egyptian law applied.[23] Presumably, the basis for this contention is his premise that this Court would apply the New York statute of limitations rather than the Egyptian law which allegedly precludes such relief. Dr. Riad, on the other hand, says that the relief available under Egyptian law in an action brought in accordance with Article 698 of the Civil Law is "exactly the same" irrespective of whether the action is brought before or after termination of the employment contract.[24]

Finally, Dr. Ahmed contends that the possible damages available in an Egyptian court for wrongful termination would be "negligible" and not worth pursuing, even if pursuit were possible. The only support offered for this assertion is the contention that the standard amount awarded to surviving family members of a person killed in an automobile accident in Egypt is the equivalent of $3,000.[25] Dr. Riad points out that the contention regarding damages is inconsistent with Articles 221 and 222 of the Egyptian Civil Law.[26] Moreover, the Court notes that Dr. Ahmed does not explain why, if his contentions are correct, Dr. Younis has brought a wrongful termination action in Egypt, in which Dr. Ahmed represents him, in which

17. Ahmed Decl. ¶ 4a.

18. Riad Supp. Decl. at 10–11.

19. Ahmed Decl. ¶ 4b–4c, 4f.

20. Riad Supp. Decl. at 12–14.

21. Ahmed Decl. ¶ 4d.

22. Riad Supp. Decl. at 14.

23. Ahmed Decl. ¶ 4e.

24. Riad Supp. Decl. at 14–15.

25. Ahmed Decl. ¶ 4g.

26. Riad Supp. Decl. at 16–17.

Dr. Younis seeks the equivalent of $300,000 in damages.

While the parties thus have devoted a good deal of effort to debating whether Dr. Younis' claim under Egyptian law is likely to prevail, subject to defenses, or likely to produce a large damage award in the event he succeeds, the resolution of their differences ultimately is unnecessary for two reasons.

▮ First, Dr. Younis ignores the fact that the question whether there is an adequate alternative forum does not turn on whether the alternative forum offers the possibility of obtaining exactly the same relief under exactly the same rules of law. As the Supreme Court said in *Piper*, an alternative forum is adequate as long as (1) the defendant is amenable to process there, and (2) that forum permits "litigation of the subject matter of the dispute."[27] This "does not require a remedy equivalent to that available in the original forum, or even a favorable one; it requires only that some remedy exists, and that the parties will be treated fairly."[28] Indeed, "[t]he possibility of a change in substantive law [due to a *forum non conveniens* dismissal] should ordinarily not be given conclusive or even substantial weight in the ... inquiry."[29] And this is only logical. A different view would dramatically undermine the *forum non conveniens* doctrine because "a plaintiff rarely chooses to bring an action in a forum, especially a foreign one, where he is less likely to recover."[30]

Second, Dr. Younis claims that the Egyptian forum is inadequate only because (1) as a foreign hire, he cannot sue for wrongful termination or obtain reinstatement, and (2) his claim in any case is subject to a one year statute of limitations that runs from the date when AUC notified him that it would not grant tenure as opposed to the date his employment ended.[31] His claim of inadequacy therefore presupposes that this Court would apply New York law to the question whether he has a right to relief as well as the New York statute of limitations.[32] But he is wrong on both counts.

▮ This is a diversity case.[33] Under well established principles, this Court would apply the choice of law rules of the State of New York in determining the law that governs this action.[34] In contract cases, New York applies the law of the jurisdiction having the most significant relationship to the issue in question.[35] In view of the facts that this dispute concerns a contract for the employment of plaintiff to teach in a university located in Egypt, that the contract arose out of an approach by plaintiff to AUC in Cairo,[36] that the contract was negotiated at least in substantial part in Egypt,[37] and that all or nearly all of the reviews and activities that resulted in the denial of tenure occurred in Egypt, this Court almost certainly would apply Egyptian substantive law to this case, even if the action remained in this forum.

Plaintiff stands in no better position with respect to the statute of limitations. While

---

27. *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252.

28. *Roynat, Inc. v. Richmond Transp. Corp.*, 772 F.Supp. 417, 419 (S.D.Ind.1991).

29. *Piper*, 454 U.S. at 247, 102 S.Ct. 252.

30. *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976).

31. Pl. Mem. 2.

32. On the latter point, he asserts that "it is axiomatic that statutes of limitations are treated as procedural ... and, therefore, New York's six-year statute of limitations for contract actions would apply ..." Pl. Mem. 3 n. 1.

33. *See* Cpt ¶¶ 1–3.

34. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir. 1998).

35. *E.g., Auten v. Auten,* 308 N.Y. 155, 160, 124 N.E.2d 99 (1954); *see Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir.1996).

Although plaintiff has framed his case as a contract action, the result would be no different if it were characterized as alleging a tort. *See Sheldon*, 135 F.3d at 853 (New York in tort cases applies the *lex locus delicti* to conduct regulating rules).

36. Younis Decl. ¶ 2.

37. *Id.* ¶ 4.

statutes of limitations indeed usually are regarded as procedural for choice of law purposes, he entirely overlooks the New York borrowing statute.[38] As this claim quite likely accrued outside the State of New York and concededly accrued in favor of a non-resident, it is barred unless it is timely under both the law of New York and the law of "the place without the state where the cause of action accrued ..."[39] If the claim accrued anywhere outside the state, it accrued in Egypt. Hence, it is highly probable that this Court would apply any relevant Egyptian statute of limitations in any case.

Thus, Dr. Younis' claim that the Egyptian forum is inadequate is doubly flawed. It is flawed first because any comparative disadvantage he might suffer from the application of Egyptian rather than New York law is immaterial to the adequacy of the Egyptian forum. And it is flawed second because this Court almost surely would apply Egyptian law even if it retained the case. Accordingly, the Court holds that Egypt is an adequate alternative forum.

*Private Interest Factors*

Having determined that Egypt is an adequate alternative forum, the Court next considers the so-called "private interest factors," which include such matters as the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses, and other practical considerations that make trial of a case easy, expeditious and inexpensive.[40] These factors, in the aggregate, weigh heavily in favor of Egypt.

To begin with, both plaintiff and defendant, in all relevant respects, are located in Cairo. While Dr. Younis contended in his October 14 declaration that he intended to return to Canada, where he resided from 1972 until 1977, in November,[41] he was born in Egypt,[42] appears to continue to hold his Egyptian citizenship along with Canadian citizenship,[43] and has lived in Egypt for the past seven years. Moreover, by instituting his action in the Cairo LRO and continuing it in the Egyptian courts, he has sacrificed substantially any contention that litigation in Egypt would be significantly less convenient for him than litigation here.

Second, the overwhelming majority of witnesses with knowledge concerning the events at issue in this case are located in Egypt. Their testimony, like that of the few who reside elsewhere in the United States, cannot be compelled by this Court.[44] The cost of bringing any who are willing to come to New York for trial to this forum would be substantial and far greater than the cost of bringing a comparative handful of witnesses to Egypt if the case proceeded there, even assuming that Egyptian courts take live testimony in civil cases.

*Public Interest Factors*

As laid out in *Gilbert*, the public interest factors are as follows:

"[f]actors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather

---

38. N.Y. CPLR § 202 (McKinney 1990).

39. *Id.*

40. *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839; *Manela*, 940 F.Supp. at 591.

41. Younis Decl. ¶ 1, 15.

42. *Id.* ¶ 1.

43. Riad Supp. Decl. at 4.

44. Only officers of AUC could be compelled to appear here. Fed.R.Civ.P. 45(c)(3)(A)(ii). It appears that no more than one or two of those involved in the matters here at issue are officers of AUC.

than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." [45]

These factors uniformly point to Egypt as the preferable forum.

To begin with, the competing declarations of Drs. Abmed and Riad are simply a preview of the difficulties likely to develop as the Court tried to apply Egyptian law if the action remains here. The Court has been unable even to locate an English language copy of the relevant Egyptian codes let alone Egyptian case law and any secondary material. In consequence, determinations of Egyptian law could degenerate into little more than swearing contests between the parties' Egyptian lawyers with the Court unable to perform its accustomed role of independent research and analysis, at least in the manner it ordinarily does so. Even if the materials were available, it would be far more desirable for the courts of Egypt to decide the Egyptian law issues presented.

Second, this is a local Egyptian employment dispute between a national of a country or countries other than the United States and a university which, although incorporated in the United States, for all material intents and purposes operates only abroad. There is very little basis for imposing the burdens of this litigation on the taxpayers, judges and prospective jurors of the United States. Even if, as plaintiff contends, Dr. McDonald made his final decision while on a trip to New York and talked to a couple of trustees about it while he was here, the overwhelming majority of the actions relevant to this case occurred in Egypt. That is where their consequences should be determined.

*Other Considerations*

Plaintiff finally argues, in the alternative, that the Court, if it dismisses, should condition dismissal on defendants, *inter alia*, submitting to jurisdiction in Egypt, waiving the statute of limitations and any defense to any remedy sought by plaintiff that AUC could not have raised had plaintiff commenced his action in Egypt on May 29, 1998, and AUC producing any and all U.S. witnesses for deposition either in Egypt or the United States in accordance with the Federal Rules of Civil Procedure.

The requirement of a submission to jurisdiction evidently was aimed at Dr. McDonald, as AUC has a major presence and obviously is subject to jurisdiction in Egypt where plaintiff already is suing it. As Dr. McDonald was dismissed for lack of jurisdiction, that request is moot.

The request for a limited waiver of the statute of limitations is appropriate. But there is no reason why AUC should consent to any relief to which plaintiff would not otherwise be entitled under Egyptian law. As indicated above, plaintiff is entitled only to a fair hearing in a forum in which some remedy is available, not equality of remedies.

Finally, there is no reason to condition dismissal on AUC producing any United States witnesses anywhere, even assuming it lies within it its power to do so. The United States courts stand ready to assist the courts of Egypt in obtaining evidence necessary for use in Egyptian proceedings according to law.[46]

*Conclusion*

For the foregoing reasons, the motion of defendant AUC to dismiss the action on the ground of *forum non conveniens* is granted in all respects subject to the condition that said defendant file with the Clerk, on or before December 21, 1998, a written instrument waiving any defense of untimeliness, to the extent it depends upon the passage of time from May 29, 1998 to and including the date of this order, to plaintiff's current Egyptian proceeding against it.

SO ORDERED.

---

**45.** *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839.

**46.** 28 U.S.C. § 1782.