Mikhail PAVLOV, et al., Plaintiffs,

v.

THE BANK OF NEW YORK
COMPANY, INC., et ano.,
Defendants,

No. 99 Civ. 10347(LAK).

United States District Court,
S.D. New York.

March 21, 2001.

Mark E. Herlihy, Harold M. Hoffman, New York City, for Plaintiffs.

John L. Warden, Bruce E. Clark, Mark De Leeuw, Jeffrey J. Chapman, Sullivan & Cromwell, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is a purported class action on behalf of the depositors of the now insolvent Joint Stock Bank Inkombank ("Inkombank"), a bank formerly engaged in business in the Russian Federation. Plaintiffs claim that defendants The Bank of New York and The Bank of New York Co., Inc. (collectively "BNY") facilitated the looting and laundering of assets of several Russian banks, including Inkombank. They seek to recover damages here under the Racketeer Influenced and Corrupt Organizations Act ("RICO")[1] as well as on theories of conversion and aiding and abetting of conversion. Defendants move to dismiss the

---

1. 18 U.S.C. § 1961 *et seq.*

second amended complaint on the grounds that (1) plaintiffs' claims belong to Inkombank, not to plaintiffs, (2) the RICO claim fails adequately to allege an "enterprise," (3) the Court lacks subject matter jurisdiction over the conversion claims, and (4) the alleged fraud is not pleaded with particularity. Alternatively, they seek *forum non conveniens* dismissal in favor of litigation in a Russian forum.

### I

Plaintiffs allege that defendants violated Section 1962(c) of title 18, which in relevant part makes it unlawful "for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." "Enterprise" is defined by the statute to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." [2]

The second amended complaint alleges that the "enterprise" consisted of:

> "defendants and certain of its [*sic*] senior officers, including but not limited to its Chairman of the Board and Chief Executive Officer Thomas R. Renyi ..., senior vice president Natasha Gurfinkel Kagalovsky ..., senior vice president Vladimir Galitzyne ..., and vice president Lucy Edwards ... joined together with corrupt members of Inkombank's senior management and Russian organized crime factions associated with them to create a criminal enterprise ca-

pable of unlawfully exploiting the emerging post-Soviet private banking sector in Russia (the 'Global Custody RICO Enterprise' or the 'Enterprise')." [3]

BNY, its senior officers, and the Inkombank participants in this supposed enterprise then are alleged to have looted Inkombank and other Russian banks and industrial companies and to have channeled the converted funds into a series of offshore accounts under control of the "enterprise." [4] Defendants assert, however, that plaintiffs have failed adequately to allege the existence of an "enterprise" within the meaning of the statute.

■ While RICO applies equally to legitimate and illegitimate groups, it is well in construing the term "enterprise" to remember the statute's overriding purpose—to create a weapon useful in combating organized crime. [5] Congress quite plainly had in mind organizations with characteristics similar to those that have been documented in many organized crime trials and become the stuff of popular culture in movies, books, and even a current television series. Thus, while an "enterprise" need not exhibit all of the characteristics of familiar criminal organizations, the Supreme Court long ago held that a RICO enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct" that "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." [6] In other words, it has a "hierarchy, organization and activities" [7]

---

**2.** *Id.* § 1961(4).

**3.** Second Am. Cpt. ¶ 2; *see also id.* ¶¶ 13, 152.

**4.** *Id.* ¶ 62.

**5.** Pub.L. No. 91–452, 84 Stat. 922–23 (1970); *United States v. Turkette,* 452 U.S. 576, 588–89, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

**6.** *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524.

**7.** *First Nationwide Bank v. Gelt Funding Corp.,* 820 F.Supp. 89, 98 (S.D.N.Y.1993) (quoting *United States v. Coonan,* 938 F.2d 1553, 1560–61 (2d Cir.1991)), *aff'd,* 27 F.3d 763 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995).

and it "must exhibit structural continuity" which "exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." [8]

▪ Implicit in these statements is a further proposition: that there must be more to an "enterprise" than simply an aggregation of predicate acts of racketeering activity. In other words, an "enterprise" must exhibit more structure than is inherent simply in the alleged pattern or racketeering activity.[9] It " 'cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts.' "[10]

▪ These requirements are not satisfied here. The only part of the alleged enterprise that even approaches their satisfaction is the Eastern European division of BNY. But a division of the defendants cannot be an "enterprise" because the "person" sued under RICO must be separate and distinct from the enterprise.[11] The addition of the "corrupt members of Inkombank's senior management and Russian organized crime factions associated with them"[12] adds nothing because there is nothing in the complaint to suggest that the members of Inkombank's management, organized crime factions, and BNY together formed a unit with a structure, a hierarchy, or a continuity apart from whatever criminal acts they allegedly committed. To construe the statute to embrace this alleged enterprise would broaden its scope far beyond anything Congress ever imagined. Indeed, it would read the enterprise element out of the statute, or

8. *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 349 (S.D.N.Y.1998).

9. *E.g., Turkette*, 452 U.S. at 583, 101 S.Ct. 2524; *Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir.1996).

> *Chang v. Chen* identified the Second Circuit as in the minority of circuits that "permit[s] the organization constituting the enterprise to be no more than the sum of the predicate racketeering acts." *Id.* at 1297–98. In *United States v. Bagaric*, 706 F.2d 42, 56 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), *overruled on other grounds by National Organization of Women, Inc. v. Scheidler*, 510 U.S. 249, 259–60, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994), the Second Circuit did point to previous decisions that had upheld application of RICO when "the enterprise was, in effect, no more than the sum of the predicate racketeering acts." However, it went on to characterize these holdings as common sense recognition that a group can be identified "in terms of what it *does*, rather than by abstract analysis of its structure." *Id.* at 56; *see also Moss v. Morgan Stanley*, 719 F.2d 5, 22 (2d Cir.1983) (recognizing that the evidence offered to prove racketeering acts and that offered to prove the existence of an "enterprise" will not always be distinct and that a RICO "enterprise" does not need an economic goal apart from the commission of the predicate acts), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. Coonan*, 938 F.2d 1553, 1559–60 (2d Cir.1991), *cert. denied*, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *Schmidt*, 16 F.Supp.2d at 349 n. 5. Thus, the statement in *Chang* appears to be a somewhat misleading summary of the law of this Circuit, at least subsequent to *Turkette*.

10. *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815 (8th Cir.1992) (quoting *United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982)).

11. *E.g., Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063–64 (2d Cir.1996), *rev'd in part on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994). Indeed, the first amended complaint, which the Court dismissed on this ground, alleged that the RICO enterprise was the Eastern European division of BNY. Order, Apr. 18, 2000, at 1.

12. Second Am. Cpt. ¶ 2.

come perilously close to doing so, by making the association inherent in the commission of any pattern of crimes sufficient to make out an "enterprise."[13]

Accordingly, the Court holds that the RICO count fails to state a claim upon which relief may be granted.

## II

The alleged bases of subject matter jurisdiction over the conversion and aiding and abetting claims are diversity of citizenship and supplemental jurisdiction. As the RICO claim has been dismissed, the Court is not obliged to exercise supplemental jurisdiction, and it declines to do so.[14]

### A. Matter in Controversy

■ In order to exercise jurisdiction based on diversity of citizenship, the matter in controversy, exclusive of interest and costs, must exceed $75,000.[15] Only two of the eight plaintiffs allege claims of the requisite magnitude. Plaintiffs nevertheless offer two theories by which they claim this requirement is satisfied as to all plaintiffs and the alleged class.

Plaintiffs contend first that the aggregate of all individual class members' claims exceeds $75,000. Alternatively, they maintain that the Court has supplemental jurisdiction over the claims of the individual class members and of the named plaintiffs with claims below $75,000 based on the fact that there is diversity jurisdiction over the claims of the two plaintiffs that exceed $75,000.

These contentions, as the Court held in dismissing the first amended complaint, are without merit. *Zahn v. International Paper Co.*[16] held that the claim of each individual plaintiff and class member must meet the jurisdictional amount requirement. Nor has the enactment of Section 1367 of the Judicial Code[17] overruled *Zahn.*[18] Accordingly, plaintiffs may not maintain a class action, and the conversion and aiding and abetting claims must be dismissed as to all plaintiffs other than Onara Partners and S & K Trust, the two plaintiffs who allege claims in excess of $75,000, for want of the requisite amount in controversy.

### B. Diversity

■ Although the parties have not raised the point, the Court's independent obligation to inquire into its subject matter jurisdiction[19] requires it again to raise the

---

**13.** These considerations render *Sumitomo Corp. v. Chase Manhattan Bank*, No. 99 Civ. 4004(JSM), 2000 WL 1616960 (S.D.N.Y. Oct. 30, 2000), the only case relied upon by plaintiffs on this point, unpersuasive. It is difficult to tell from the opinion precisely what the enterprise allegations in the complaint in that case were, so it is not entirely clear whether the decision goes quite as far as plaintiffs suggest. In any case, however, this Court for the reasons set forth in the text respectfully disagrees with any suggestion there that a common purpose to engage in a fraudulent scheme, coupled with efforts to accomplish that purpose, is sufficient to make the participants an "enterprise" within the meaning of the statute.

**14.** *See, e.g., Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (supplemental jurisdiction ordinarily declined where federal claim dismissed before trial); *DiLaura v. Power Auth.*, 982 F.2d 73, 80 (2d Cir.1992) (same).

**15.** 28 U.S.C. § 1332.

**16.** 414 U.S. 291, 300–01, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

**17.** 28 U.S.C. § 1367.

**18.** *See Bernard v. Gerber Food Prods.*, 938 F.Supp. 218, 223–24 (S.D.N.Y.1996); *cf. Harry Winston, Inc. v. Kerr*, 72 F.Supp.2d 263, 264 (S.D.N.Y.1999).

**19.** *E.g.*, FED. R. CIV. P. 12(h)(3); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 929–30

question whether complete diversity exists as between the two remaining plaintiffs and the defendants.[20]

The second amended complaint alleges that Onara Partners and S & K Trust both are business trusts organized and existing under the laws of Bulgaria and that the current trustee of each is a Greek citizen domiciled in Bulgaria.[21] These allegations, however, are insufficient to establish diversity of citizenship.

■ As the Supreme Court made clear in *Carden v. Arkoma Associates*,[22] business entities other than corporations are not treated as citizens.[23] Rather, such an entity is regarded as a citizen of every state of which "the several persons composing such association" is a citizen.[24] No exception has been made for business trusts.[25] In consequence, the allegation of Bulgarian citizenship, to the extent it rests on the alleged existence of these trusts as business entities under Bulgarian law, is insufficient.

There remains the allegation that the trustee of these alleged business trusts is a Greek citizen domiciled in Bulgaria. In *Navarro Savings Association v. Lee*,[26] the Supreme Court confronted the question whether diversity jurisdiction of a suit by individual trustees of a business trust might be based upon the individual citizenship of the trustees without regard to the citizenship of the beneficiaries of the trust. After noting that the trustees, under the declaration of trust, had the exclusive authority to deal with trust property, free of any control by the beneficiaries, it concluded that the trustees were real and substantial parties to the controversy and thus "entitled to bring diversity actions in their own names and upon the basis of their own citizenship."[27] In this case, however, the trustee has not sued in his own name. In any event, the complaint is devoid of allegations establishing that he enjoys the powers that led the Supreme Court in *Navarro* to conclude that the trustees in that case were entitled to bring a diversity action on the basis of their own citizenship.

Accordingly, we are left simply with the allegation that Onara Partners and S & K Trust are business entities organized under Bulgarian law. There is no allegation that all of their members or beneficiaries are citizens of states or countries other than those of which defendants are citizens. Accordingly, the Court lacks subject matter jurisdiction over their conversion and aiding and abetting claims.

(2d Cir.1998) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453, 20 S.Ct. 690, 44 L.Ed. 842 (1900) and *Mansfield C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)).

**20.** The Court previously dismissed these claims by these plaintiffs for want of adequate allegations of citizenship. Order, Apr. 18, 2000, at 2. The second amended complaint has added allegations.

**21.** Second Am. Cpt. ¶¶ 26–27.

**22.** 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

**23.** *Id.* at 188–89, 110 S.Ct. 1015.

**24.** *Id.* at 196, 110 S.Ct. 1015 (quoting *Great S. Fire Proof Hotel Co.*, 177 U.S. at 456, 20 S.Ct. 690) (internal quotation marks omitted).

**25.** *See id.* at 191, 110 S.Ct. 1015 (rejecting the argument that *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), had established an exception for trusts, stating that *Navarro* had not addressed "the question whether a party that is an artificial entity other than a corporation can be considered a 'citizen' of a State").

**26.** 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980).

**27.** *Id.* at 462, 100 S.Ct. 1779.

## III

In ordinary circumstances, the Court would consider granting these two plaintiffs leave to amend in order permit them to attempt once again to allege the existence of subject matter jurisdiction.[28] But there remains defendants' motion to dismiss on the ground of *forum non conveniens* which, if granted, would make the existence of subject matter jurisdiction academic.

■ The analysis of *forum non conveniens* motions requires consideration of whether there is an adequate alternative forum [29] and, if so, a balancing of "a series of private and public interests in determining whether to retain the case or dismiss it in favor of [the] alternative forum." [30] The parties lock horns at the outset on the issue whether Russia provides an adequate alternative forum.

### A. Adequacy of Alternative Forum

■ As the Second Circuit has explained, "[t]he requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in 'rare circumstances' when 'the remedy offered by the other forum is clearly unsatisfactory.' " [31] Thus, "[a]n alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.' " [32]

■ Defendants' expert has submitted an affidavit explaining that Russian law permits causes of action for conversion to proceed in Russian "arbitration" courts—which in reality are commercial courts—in order to "make the victims of such injuries whole." [33] Nevertheless, plaintiffs contend that Russia would not provide an adequate forum for their claims for five reasons.

First, they contend in substance that the Russian legal system is corrupt and riddled with political influence, characteristics that allegedly would be at their worst given the political sensitivity of the subject matter of this case.[34] The Second Circuit, however, has made it clear that " '[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.' " [35] In reliance on this principle, it has rejected an attack on the adequacy of

28. *Cf.* 28 U.S.C. § 1653.

29. *E.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 56 (2d Cir.2000); *see American Dredging Co. v. Miller,* 510 U.S. 443, 447–48, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

30. *Manela v. Garantia Banking Ltd.,* 940 F.Supp. 584, 590 (S.D.N.Y.1996) (quoting *Ioannides v. Marika Mar. Corp.,* 928 F.Supp. 374, 377 (S.D.N.Y.1996)) (internal quotation marks omitted); *accord, e.g., American Dredging Co.,* 510 U.S. at 448–49, 114 S.Ct. 981 (quoting *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839).

31. *Murray v. British Broad. Corp.,* 81 F.3d 287, 292 (2d Cir.1996) (quoting *Piper Aircraft Co.,* 454 U.S. at 254 n. 22, 102 S.Ct. 252).

32. *Alfadda v. Fenn,* 159 F.3d 41, 45 (2d Cir. 1998) (quoting *Piper Aircraft Co.,* 454 U.S. at 254 n. 22, 102 S.Ct. 252); *accord, Younis v. American Univ.,* 30 F.Supp.2d 390, 394 (S.D.N.Y.1998).

33. Stephan Decl. ¶¶ 4–5, 7–9; Supp. Stephan Decl. ¶¶ 2, 14.

34. Fishkin Aff. ¶¶ 11–20 & Ex. C.

35. *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 66 (2d Cir.1991) (quoting *Jhirad v. Ferrandina,* 536 F.2d 478, 484–85 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976)). *Accord PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998).

the Venezuelan courts very much like that made here.[36] Only recently, Judge Sweet on this basis rejected a contention that the Russian courts are not an adequate alternative forum.[37] Other district courts have reached similar conclusions concerning other allegedly corrupt foreign judicial systems.[38] While this Court "is not entirely unsympathetic to the trials and tribulations that [plaintiffs] may face should their allegations about the [Russian] judicial system turn out to be true,"[39] it would be inappropriate for it to pass judgment on that system, particularly on the basis of the sort of broad brush, hearsay accounts upon which plaintiffs' attack rests.

Plaintiffs next claim that it is doubtful that BNY maintains a sufficient presence in Russia to be subjected to jurisdiction there.[40] This appears to be incorrect. In any case, however, BNY has offered to consent to jurisdiction in Moscow with respect to these claims,[41] thus removing this objection.

■ Third, plaintiffs complain that there is no class action or comparable mechanism available under Russian law and that the filing of a claim requires payment of a state duty of 6 percent of the amount of damages sought.[42] But the lack of a class action device is not a basis for concluding that a foreign forum is inadequate for *forum non conveniens* purposes.[43] And the state tax or filing fee, even if it might be an obstacle to some individual claims, is insufficient to render the forum inadequate for Onara Partners and S & K Trust, both of which claim to be business trusts based in Bulgaria with claims in excess of $75,000.

■ Fourth, plaintiffs complain that Russian civil procedure does not provide for "meaningful" pretrial discovery.[44] But the requirement of an adequate alternative forum requires only that some remedy exist there, not that it be equivalent to that available here.[45] In consequence, the unavailability of pretrial discovery—a characteristic that Russian civil procedure, as one of plaintiffs' experts[46] admits, shares with "many civil code jurisdictions"[47]—does not

---

36. *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 981–82 (2d Cir.1993).

37. *Parex Bank v. Russian Sav. Bank,* 116 F.Supp.2d 415, 423–24 (S.D.N.Y.2000).

38. *Banco Latino v. Gomez Lopez,* 17 F.Supp.2d 1327, 1332 (S.D.Fla.1998) (Venezuela); *Banco Mercantil, S.A. v. Hernandez Arencibia,* 927 F.Supp. 565, 567–68 (D.P.R. 1996) (Dominican Republic).

39. *Banco Mercantil, S.A.,* 927 F.Supp. at 567.

40. Kuznetsov Aff. ¶ 7.

41. Defendants' memorandum in support of their motion to dismiss the second amended complaint, at 22 (asserting that BNY is subject to service in Russia and that "[e]ven if that were not so, the Court could condition dismissal upon consent to Russian jurisdiction....").

42. Kuznetsov Aff. ¶ 8.

43. *E.g., In re Lloyd's Am. Trust Fund Litig.,* 954 F.Supp. 656, 673 (S.D.N.Y.1997) ("The absence of a rule providing for class actions in the alternative forum does not render the forum inadequate.") (citing *In re Union Carbide,* 634 F.Supp. 842, 852 (S.D.N.Y.1986)), *aff'd as modified,* 809 F.2d 195 (2d Cir.1987).

44. Kuznetsov Aff. ¶ 9; Fishkin Aff. ¶ 21.

45. *See, e.g., Piper Aircraft Co.,* 454 U.S. at 247, 102 S.Ct. 252; *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir. 1998); *Murray,* 81 F.3d at 292; *Younis,* 30 F.Supp.2d at 394.

46. The "expert" in fact is one of plaintiffs' counsel, hardly an unbiased source of information.

47. Kuznetsov Aff. ¶ 9.

render the forum inadequate.[48]

■ Finally, one of plaintiffs' experts expresses concern that plaintiffs, were they to prevail in Russia, would be forced to "relitigate substantial portions of their case before a U.S. court would honor a Russian judgment against a U.S. bank in this matter." [49] But plaintiffs' expert is a Russian lawyer with no discernable qualifications in U.S. law. The Uniform Foreign Country Money–Judgments Recognition Act, which has been adopted in New York,[50] insofar as it is relevant here, would permit a court to refuse enforcement to a Russian money judgment only if it concluded that the Russian legal system "does not provide impartial tribunals or procedures compatible with the requirements of due process of law ..." [51] In view of BNY's staunch assertion here that the Russian legal system provides an adequate alternative forum, it quite likely would be estopped to mount such a challenge to a Russian money judgment in this case.[52] Moreover, at least one U.S. court has recognized and enforced a Russian custody decree.[53]

In the end, given the standards that govern the determination, this Court is persuaded Russia would provide an adequate alternative forum for the conversion and aiding and abetting claims of Onara Partners and S & K Trust.

## B. Private Interest Factors

■ Having concluded that Russia is an adequate alternative forum, the Court turns to the so-called "private interest factors," first among them being the oft-stated principle that a plaintiff's choice of forum is entitled to substantial deference and should not be disturbed lightly.[54]

### 1. Plaintiff's Choice of Forum

■ Although a plaintiff ordinarily enjoys a presumption in favor of the plaintiff's choice of forum, the presumption is substantially weaker where, as here, foreign plaintiffs choose an American forum.[55] Further, the Russian courts already have provided a representative to act on behalf of Inkombank.[56] Accordingly, the fact that

---

**48.** *MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.,* 46 F.Supp.2d 249, 253 (S.D.N.Y.1999) (citing cases).

**49.** Kuznetsov Aff. ¶ 10.

**50.** N.Y. C.P.L.R. §§ 5301–09 (McKinney 1997 & Supp.2000).

**51.** *Id.* § 5304(a), subd. 1.
The Act contains other grounds for non-recognition such as lack of jurisdiction. The other grounds, however, are case specific rather than related to the nature of the foreign legal system. *See generally id.* §§ 5304(a), subd. 2, 5304(b).

**52.** Judicial estoppel arises where a party (1) advances a factual position inconsistent with a position take by it in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner. *Wight v. Bankamerica Corp.,* 219 F.3d 79, 90 (2d Cir.2000). BNY probably would not be

heard to resist enforcement of a Russian money judgment in this matter on the ground that Russia does not provide impartial tribunals and procedures compatible with due process if it obtained a *forum non conveniens* dismissal here on the premise that a Russian forum would be adequate.

**53.** *Bliss v. Bliss,* 733 A.2d 954 (D.C.App. 1999).

**54.** *E.g., Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *DiRienzo v. Philip Servs. Co.,* 232 F.3d 49, 56–57, 60 (2d Cir.2000).

**55.** *Piper Aircraft Co.,* 454 U.S. at 255–56, 102 S.Ct. 252; *Alfadda,* 159 F.3d at 46; *PT United Can Co.,* 138 F.3d at 74; *Ioannides,* 928 F.Supp. 374, 378 (S.D.N.Y.1996).

**56.** Stephan Decl. ¶ 13.

a handful of Inkombank depositors have chosen a U.S. forum in an effort to recover losses that in the first instance, at least, were inflicted on Inkombank itself is entitled to little deference.[57]

### 2. Other Private Interest Factors

 The remaining private interest factors include such matters as the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses, and other practical considerations that make trial of a case easy, expeditious and inexpensive.[58]

The central claim in this case is that Inkombank executives, other Russian figures, and a few BNY employees systematically looted Inkombank's assets, transferred the money overseas through BNY, and thus caused Inkombank to fail and the plaintiffs to lose their deposits.[59] Thus, while records of and a few witnesses knowledgeable about BNY's alleged activities in transferring money out of Russia will be found outside Russia, a vast quantity of documents and virtually everyone knowledgeable about the alleged looting of Inkombank and the reasons for its collapse are in Russia. This evidence, moreover, presumably is in the Russian language, and the witnesses, if they testify, probably would do so in Russian. Further, while plaintiffs claims that they lost their entire deposits, Inkombank currently is involved in Russian proceedings similar to bankruptcy in which depositors may be repaid, at least in part.

The litigation of this case will present difficulties wherever it occurs. But it seems clear that the degree of difficulty would be substantially greater here than in Moscow. This Court has no ability whatever to compel the production of documents or witnesses from Russia, which appears to be the locus of all or substantially all of the evidence concerning the core issues in the case—whether Inkombank was looted and why it collapsed. Such evidence as it might obtain on that issue presumably would be in Russian. And while a Russian court too would face difficulties, the critical difference is that BNY would be subject to compulsory process in Russia. Thus, a Russian court would have access to evidence concerning both aspects of this case—the alleged looting and BNY's alleged laundering of the money—whereas this Court would, have access to evidence concerning only the latter. In these circumstances, the private interest factors weigh decidedly in defendants' favor.

### 3. Public Interest Factors

As laid out in *Gilbert*, the public interest factors are as follows:

> "[f]actors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the coun-

**57.** *See, e.g., In re Union Carbide*, 809 F.2d 195, 202 (2d Cir.1987).

**58.** *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839; *Manela v. Garantia Banking Ltd.*, 940 F.Supp. 584, 591 (S.D.N.Y.1996).

**59.** Second Am. Cpt. ¶¶ 2, 11, 13, 43.

try where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." [60]

This at root is predominantly a Russian affair. A few depositors of a Russian bank, most of· them located in Russia, claim that the Russian principals of the bank, joined by a handful of BNY employees, engaged in activity in Russia to convert the plaintiffs' deposits and then to ship the money out of the country. They claim that a key part of this activity was the infiltration of the bank by Russian organized crime.[61] Moreover, while the United States has an obvious and strong interest in ensuring the proper functioning of U.S. banks, that interest is being addressed directly by both the criminal prosecutions and investigation in this district and, presumably, by U.S. bank regulators. This is a private dispute about monetary loss allegedly suffered by depositors in a Russian bank. There is little justification for imposing it on U.S. courts and jurors.

The fact that there are shareholder derivative actions brought on behalf of BNY proceeding in this and a New York State court [62] does not alter this conclusion, as plaintiffs have claimed. BNY is an American company with no doubt predominantly American shareholders. Its board, the actions of which are at issue in the derivative suits, functioned here. There is a strong public interest in the adjudication here of the issues of corporate responsibility these cases raise. Moreover, while there certainly is overlap in the issues presented in this case and those, that fact does not get plaintiffs where they wish to go. The derivative courts no doubt will have serious difficulty in obtaining and understanding evidence from Russia. In view of the lack of a better forum for those suits and the public interest in resolving them here they have no choice but to do their best in difficult circumstances. But this Court has a choice, and the public interest at play in the derivative suits is absent here.

 This view is buttressed by the fact that the burden of this litigation would be quite substantial. The Court already has noted that a good deal of the evidence almost undoubtedly is in Russian. But that is not all. Were this Court to entertain this action, it almost certainly would be compelled to apply Russian law.[63] As is evident from a comparison of the conflicting submissions by the parties'. experts on the issue of whether plaintiffs' claims actually belong only to Inkombank, as would

---

60. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839.

61. Second Am. Cpt. ¶¶ 13, 46–50.

62. *In re Bank of New York Deriv. Litig.*, Nos. 99 Civ. 9977 & 10616(DC), 2000 WL 1708173 (S.D.N.Y. Nov. 14, 2000); *Katz v. Renyi*, N.Y. Co. Index No. 604465/99.

63. This is a diversity case, so the Court must apply the choice of law rules of New York, the forum state. *Klaxon v.. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Conversion claims are governed by the law of the state having the most significant relationship to the tort. *E.g., Hoelzer v. City of Stamford*, 722 F.Supp. 1106, 1112 (S.D.N.Y.1989), *aff'd*, 933 F.2d 1131 (2d Cir.1991), *cert. denied*, 506 U.S. 1035, 113 S.Ct. 815, 121 L.Ed.2d 687 (1992); *see Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 967 (2d Cir.1997), *cert. denied*, 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998). As Russia has the most significant relationship with the alleged looting of a Russian bank, Russian law doubtless would govern at least a substantial part of the case.

be true if it were an American bank, or may be sued upon by plaintiffs themselves,[64] the determination of Russian law on the array of legal questions likely to arise in adjudicating the propriety of the transactions by which plaintiffs claim that Inkombank was looted would be a daunting task indeed. To paraphrase this Court's statement in *Younis v. American University*, "it would be far more desirable for the courts of [Russia] to decide the [Russian] law issues presented," which "could degenerate [in this Court] into little more than swearing contests between the parties' [Russian] lawyers."[65]

In sum, this Court holds that Russia is an adequate alternative forum for this dispute. It concludes further that public and private factors favoring litigation in Russia over litigation here overcome the relatively modest deference due to the choice of this forum by a small number of foreign depositors of a Russian bank.

## IV

For the foregoing reasons, defendants' motion to dismiss the complaint is granted. The dismissal of the RICO claim is on the merits. In view of plaintiffs' two previous opportunities to amend in order to state a legally sufficient RICO claim, the dismissal is without leave to amend. The conversion and aiding and abetting claims of all plaintiffs are dismissed for lack of subject matter jurisdiction. While the Court in other circumstances would grant Onara Partners and S & K Trust leave to amend yet again to allege subject matter jurisdiction, leave is denied here because their conversion and aiding and abetting claims are dismissed on the alternative ground of *forum non conveniens* provided that defendants, on or before March 28, 2001, file a docu-

ment with the Clerk (a) consenting to the exercise of personal jurisdiction over them by the Russian arbitration court in Moscow, and (b) representing that they will not assert or rely upon the passage of time from the date of commencement of this action to and including May 28, 2001 by way of defense based in whole or in part on the timeliness of an action by those plaintiffs, in each case on the conversion and aiding and abetting claims asserted in the second amended complaint herein. Upon the filing of said document, the Clerk shall enter final judgment and close the case.

SO ORDERED.

---

**64.** Kuznetsov Aff. ¶ 3; Fishkin Aff. ¶¶ 6–7; Supp. Stephan Aff. ¶¶ 2–9.

**65.** 30 F.Supp.2d at 396.